IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERIC SION GREGORY,

        Petitioner,

vs.

MIKE KNOWLES,[1] Warden (A),
California Medical Facility,

        Respondent.

No. 2:08-cv-00959-JKS

MEMORANDUM DECISION

Petitioner Eric Sion Gregory, a state prisoner appearing *pro se*, has filed a petition for relief under 28 U.S.C. § 2254. Gregory is currently in custody of the California Department of Corrections and Rehabilitation incarcerated at the California Medical Facility, Vacaville, California. Respondent has filed his answer, and Gregory has filed a traverse. Gregory has also filed a motion for leave to conduct discovery (Docket No. 10), a motion for leave to request admissions (Docket No. 11), a second motion for leave to request admissions (Docket No. 20), a motion to direct Respondent to lodge additional documents (Docket No. 21), a second request for leave to conduct discovery (Docket No. 29), a request for an evidentiary hearing (Docket No. 32), and a request for "Destruction Order" (Docket No. 33).

I. BACKGROUND/PRIOR PROCEEDINGS

A Sacramento County Superior Court jury convicted Gregory in November 2004 of inflicting corporal injury resulting in a traumatic condition on a co-habitant (Cal. Penal Code, § 273.5(a)) and false imprisonment by violence or menace (Cal. Penal Code § 236). The jury also found true allegations that Gregory inflicted great bodily injury under circumstances involving domestic violence in the commission of both offenses (Cal. Penal Code § 12022.7(e)),

---

[1] Mike Knowles, Warden (A), California Medical Facility is substituted for James Hartley, Warden, Corcoran State Prison. Fed. R. Civ. P. 25(d).

and used a dangerous and deadly weapon (a crutch) in inflicting corporal injury upon his cohabitant (Cal. Penal Code § 12022(b)(1)).  In a bifurcated proceeding, the trial court found Gregory had been convicted of a prior serious felony (robbery) (Cal. Penal Code § 667(a)).

On December 10, 2004, the Sacramento County Superior Court sentenced Gregory to an aggregate term of 17 years 4 months in state prison, consisting of three years (the middle term) for inflicting corporal injury, doubled for the prior strike conviction (Cal. Penal Code §§ 667(e)(1), 1170.12(c)(1)), plus four years (the middle term) for the domestic violence enhancement, plus one year for the weapons enhancement, eight months (⅓ the middle term) for false imprisonment, doubled for the prior strike conviction, to run consecutively with the sentence imposed for inflicting corporal injury; four years for the domestic violence enhancement was stayed (Cal. Penal Code § 654.)  Finally, Gregory was given five years for the prior serious felony conviction (Cal. Penal Code § 667(a)).

Gregory timely appealed his conviction to the California Court of Appeal, Third Appellate District, which affirmed his conviction in an unpublished reasoned decision.[2]  The California Supreme Court summarily denied review without opinion or citation to authority on May 23, 2007.[3]  On June 14, 2007, Gregory filed a petition for habeas relief in the Sacramento County Superior Court, which denied his petition in a reasoned opinion.  Gregory filed subsequent petitions for habeas relief in the California Court of Appeal and California Supreme Court, which were summarily denied without opinion or citation to authority on September 20, 2007, and April 16, 2008, respectively.  Gregory timely filed his petition for relief in this Court on May 5, 2008.

## II.  GROUNDS RAISED/DEFENSES

In his petition Gregory raises eight grounds:  (1) ineffective assistance of trial counsel; (2) a violation of due process by the use of perjured testimony and suppression of the evidence; (3) conviction obtained by coercion and duress of the victim; (4) use of hearsay evidence violated a

---

[2] Accessible on WestLaw.  2007 WL 831747 (Cal. App. 3 Dist.).

[3] On January 4, 2005, while his appeal was pending, Gregory filed a petition for a writ of habeas corpus in the Sacramento County Superior Court, which was denied because an appeal was pending. This proceeding is irrelevant to the issues presented in Gregory's petition before this Court.

right to confrontation; (5) prosecutorial misconduct; (6) ineffective assistance of appellate counsel; (7) insufficiency of the evidence to support conviction; and (8) trial court abused its discretion in failing to strike the prior conviction.

Respondent contends that Gregory's fourth and fifth grounds are barred as procedurally defaulted. Respondent raises no other affirmative defenses.[4]

## III. STANDARD OF REVIEW

Because Gregory filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7] When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect or erroneous."[8] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination

---

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[6] *Williams v. Taylor*, 529 U.S. at 412.

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S.Ct. 743, 746-47 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

was incorrect.[9]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court,[11] which in this case was that of the California Court of Appeal on direct appeal and the Sacramento Superior Court in the state habeas proceedings.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]

To the extent that Gregory raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[13]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[14]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[15]  Nor may a federal court issue a habeas writ based

---

[9] *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S.Ct. 1933, 1939 (2007).

[10] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 504 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[13] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  A federal court must accept that state courts correctly applied state laws. *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[14] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).

[15] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[16]

## IV. DISCUSSION

Gregory's conviction in this case arose out a series of brutal beatings of his fiancée over a span of approximately two days, including with a crutch and an attempt to strangle her with a cord. The rest of the facts are set out in detail in the decision of the California Court of Appeal and are well known to the parties, and, in the interests of brevity, are not repeated here.

Ground 1: Ineffective Assistance of Trial Counsel.

Gregory contends that trial counsel's performance was deficient in nine aspects in that counsel failed to: (1) investigate DNA evidence; (2) call certain witnesses; (3) call an expert witness with respect to the medical records and the victim's injuries; (4) request jury instructions on inconsistent statements; (5) request a psychological examination of the victim; (6) object to deliberate, deceptive and false statements by the prosecution; (7) adequately investigate; (8) impeach the victim; and (9) obtain and introduce exonerating evidence.

Gregory raised this ground in his state court habeas proceedings. The Sacramento County Superior Court rejected Gregory's arguments, holding:

### 1. Ineffective Assistance Of Trial Counsel

Petitioner must show both (1) counsel's representation fell below an objective standard and (2) counsel's failure was prejudicial to the defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) The court does not second-guess trial counsel and gives great deference to counsel's tactical decisions. (*In re Avena* (1996) 12 Cal.4th 694, 722.)

Petitioner must demonstrate actual prejudice, meaning there is a reasonable probability that, but for the attorney's errors, the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

As with any petition for habeas, petitioner must state a prima facie case for relief. (*In re Bower* (1985) 38 Cal.3d 865, 872.) The petition should attach reasonably available documentary evidence or affidavits supporting the claim. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

The petition fails to state a prima facie claim for relief.

---

[16] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

## A.  Failure To Investigate

A claim counsel was ineffective in failing to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had.  (*People v. Geddes* (1991) 1 Cal.App.4th 448, 454.)

Petitioner asserts counsel failed to investigate a claim of third party culpability.  Specifically, the victim testified she heard voices suggesting two men and a woman had beaten her.  However, petitioner does explain [*sic*] how counsel could have further investigated this theory or what evidence would have been discovered.

## B.  Failure To Test The Crutch

The victim told police petitioner hit her with a crutch and testified the crutch had what appeared to be blood on it.  Petitioner claims counsel should have had the crutch tested to determine whether it was blood and, if so, whether it belonged to the victim.  Again, petitioner failed to explain what evidence would have been obtained had counsel tested the crutch.

## C.  Failure To Call Witnesses

Petitioner claims counsel should have called his former trial counsel and a defense investigator to testify the victim stated at one point she was sure petitioner did not assault her.  However, in the same statement the victim said she "realized" petitioner was not the one who assaulted her because she overheard others talking as if they had assaulted her.  The victim's proffered statement is hardly dispositive.

Moreover, the victim testified extensively and was cross-examined thoroughly about her inconsistent statements.  It is not likely any additional testimony from petitioner's previous trial counsel or investigator regarding the victim's conflicting statements would have altered the outcome.

## D.  Medical Records

Petitioner claims it was necessary to call an expert witness to address the victim's medical records.  Again, however, he does not explain why an expert was necessary.  Nor does the petition show the records were improperly admitted.

## E.  Jury Instructions

Petitioner claims counsel failed to request a jury instruction relating to witness impeachment based on prior inconsistent statements.  However, the court gave CALJIC No. 2.13. [N.2]  The petition again fails to explain what further instruction should have been given or how petitioner was prejudiced.

> [N.2] "Evidence that at some other time a witness made a
> statement or statements that is or are inconsistent or consistent with

his or her testimony in this trial, may be considered by you not only
for the purpose of testing the credibility of the witness, but also as
evidence of the truth of the fact as stated by the witness on that
former occasion . . . ."

## F. Psychological Examination

Petitioner claims counsel should have requested psychological testing of the
victim. No authority is cited for this proposition, or what evidence would have
been produced had it been ordered.

## G. Failure To Object

Petitioner complains the prosecutor engaged in misconduct and his counsel failed
to object: First, the prosecutor allegedly made false statements as to whether the
victim told detectives petitioner did not assault her. Second, the prosecutor
withheld exculpatory evidence. Third, she referred to the crutch as bloody when
there was no evidence of blood. Finally, she expressed her personal opinion
petitioner was guilty. None of the alleged acts constituted misconduct.

The transcript shows during argument the prosecutor said, "Ms. Jones never told
Detective Killip unequivocally that Mr. Gregory didn't do this." (Page 428 of
Exhibit 8.) Petitioner has not identified any testimony in which Jones testified
contrary to the prosecutor's statement. [N.3]

> [N.3] Although petitioner cites RT 265, the only portion of that
> page that refers to Ms. Jones's communication with Killip is a
> prefatory statement by defense counsel. It was not in direct
> response to a question, i.e., did Jones ever tell Killip that petitioner
> did not commit the crime. Petitioner also refers to exhibits as
> contradicting the prosecutor, but those exhibits were not admitted
> as evidence. Therefore, petitioner has not shown that the
> prosecutor misstated the evidence.

Petitioner fails to demonstrate the evidence allegedly withheld was in fact
exculpatory. (See Pen. Code, § 1054.1(e); *Brady v. Maryland* (1963) 373 U.S.
83.)

Petitioner claims there was no evidence there was blood on the crutch as stated by
the prosecutor. However, the victim testified the crutch looked like it had blood
on it. The prosecutor's statement was thus reasonable in light of the evidence.

Nor did the prosecutor express her personal opinion as to petitioner's guilt. A
prosecutor may assert the defendant is guilty if that belief is based on the
evidence. (See *People v. Mayfield* (1997) 14 Cal.4th 668, 782.) That is what the
prosecutor did here. As she summarized the evidence, her assertion petitioner was

guilty was a rational inference from the evidence rather than a statement of her personal belief.

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Gregory must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[17]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[18]  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[19] *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.  Indeed, the Supreme Court admonished in *Strickland*:[20]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

---

[17] 466 U.S. 668, 687 (1984).

[18] *Id.*

[19] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[20] 466 U.S. at 689 (internal citations and quotation marks omitted).

The petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[21]   Gregory carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.[22]  As the Supreme Court has stated:[23]

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error."  (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

>> "**<u>CAUTION</u>: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**" Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

As he did in his petition for habeas relief in the state courts, Gregory couches his arguments in purely conclusory and speculative terms as to what *might have been* the result if counsel had not committed the alleged errors of omission.

A.  *DNA Test*.  No evidence that a DNA test would have shown that substance on the crutch was not blood or the blood of the victim.

B.  *Failure to Call Witnesses*.  The witnesses could merely have told the jury what the victim told them concerning her identification of Gregory as the assailant and her "belief" at the time of the conversations that Gregory might not have been the assailant.  As the Sacramento County Superior Court noted, the victim's prior inconsistent statements were brought out and

---

[21] Rules—Section 2254 Cases, Rule 2(c).

[22] *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

[23] *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).

thoroughly examined through cross-examination. Perhaps more importantly, the victim admitted to making these earlier statements. The testimony of the witnesses Gregory contends should have been called would not have provided the jury with any facts that were not presented by the victim's own testimony.

C. *Failure to Call Expert Witness*. Gregory's contention of what an expert would have found is pure conjecture and speculation. In particular, Gregory fails to explain how an expert, who had not examined the victim at or near the time she was assailed, could tell whether the injuries were new or preexisting or could not have been caused by the crutch.

D. *Failure to Request Jury Instructions*. As in his state court habeas petition, Gregory fails to specify what additional instruction should have been requested. The Court also notes that in his closing summation, counsel pointed out to the jury the victim's prior inconsistent statements "exonerating" Gregory, her poor eyesight, the lighting conditions, the fact she testified she never saw her assailant, and that she had been drinking and using drugs as affecting her reliability. What more counsel should or could have done is unexplained.

E. *Psychological Examination of Victim*. In addition to the patent lack of authority for a psychological examination of a victim, this is also a conclusory allegation of what might have been established, *i.e.*, the psychological damage the use of crack cocaine had on the victim.

F. *Failure to Object*. As discussed further below in connection with the fifth ground, prosecutorial misconduct, there was no prosecutorial misconduct, and any objection would have been overruled.

G. *Failure to Investigate*. How a failure to investigate whether the attic was boarded up is relevant to any of the disputed issues is unexplained. The only testimony in the record concerning the attic is that of the victim in which she refers to some people who were living in the attic of the apartment complex at the time she and Gregory moved in.

H. *Failure to Impeach Victim*. This point is so totally devoid of merit as to be specious. Gregory recites all the testimony on both direct and cross-examination that was inconsistent or otherwise cast doubt on the ability of the victim to have identified her assailant, all of which counsel pointed out to the jury in his closing summation. What more counsel could have done to "impeach" the victim is unexplained and defies logical explanation.

I. *Failure to Obtain and Introduce Exculpatory Evidence.*  Gregory complains that counsel's performance was defective for failing to obtain and introduce the taped interview of the victim by an investigating detective.  As noted further below, trial counsel extensively cross-examined both the detective and the victim on the prior inconsistent statements made in the interview.[24]  What more would have been shown by the tapes themselves does not appear from either the petition or the record.

Based on the record before it, this Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[25]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Gregory's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  In particular, Gregory has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission.  Gregory is not entitled to relief under his first ground.

Ground 2:  Use of Perjured Testimony/Suppression of Evidence.

Ground 3:  Coercion/Duress.

Gregory's second and third grounds are so interrelated and based upon similar facts that discussion of them concurrently is appropriate.

In his second ground Gregory argues that because the trial testimony of the victim differed from pretrial statements she made to police officers during the investigation of the crime, her trial testimony was perjured and/or coerced.  Gregory also contends that the prosecution suppressed a tape recording of an interview of the victim by the prosecutor and investigating detective.  Gregory raised these issues in his state habeas proceedings.  The Sacramento County Superior Court rejected Gregory's argument, holding:

---

[24] Pages 25 – 27

[25] 28 U.S.C. § 2254(d).

A claim the conviction was based upon false evidence must show false evidence which was "substantially material or probative on the issue of guilt or punishment was introduced against a person at any hearing or trial relating to his incarceration." (Pen. Code, § 1473(b) (1).) Petitioner must show by a preponderance of the evidence such false evidence was introduced at his trial. (*In re Sassounian* (1995) 9 Cal.4th 535, 546.)

Petitioner's claim his conviction was the result of false and/or coerced testimony is based on the victim's prior inconsistent statements. However, it is not uncommon for the victim in a case of domestic abuse to recant the initial report. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1129.) The jury heard testimony about the victim's original report petitioner assaulted her, and her later report she believe [sic] he did not assault her. The victim was cross-examined about her attempt to recant. She also testified a detective told her if she did, she could be charged with making a false police report. The jury was thus fully aware of the circumstances surrounding her various statements. Petitioner has not shown the victim's testimony was knowingly false or coerced.

It is beyond cavil "that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[26] Inconsistencies between statements made to police during the investigation and testimony given at trial do not establish that the testimony given at trial was perjured.[27]

In his third ground Gregory also contends that the trial testimony of the victim was coerced in that she was threatened with prosecution if she did not agree to testify at trial that Gregory was the assailant. The alleged coercion was that she was told that if she contradicted her initial statement that Gregory had assaulted her, she "could be charged for making a false accusation." There is no evidence in the record that the police used violence or the threat of violence against Jones.[28] There is no evidence that this "threat" in any way interfered with the decision of the victim to testify or that it coerced her into committing perjury.[29] Suffice it to say

---

[26] *United States v. Agurs*, 427 U.S. 97, 103 (1976).

[27] *See United States v. Wolf,* 813 F.2d 970, 976-77 (9th Cir. 1987) (discrepancies in witness testimony, subject to cross-examination, did not establish that the trial testimony was false).

[28] *See Hysler v. Florida*, 315 U.S. 411, 413 (1942).

[29] *Cf. Williams v. Woodford*, 384 F.3d 567, 602 (9th Cir. 2004) ("The prosecution's conduct must amount to a substantial interference with the defense witness's free and unhampered determination to

that, at this point, the Supreme Court has never held that the threat of possible prosecution, standing alone, was sufficient to support a determination that testimony was coerced.[30]

Gregory also argues that the prosecution failed to disclose a tape recorded interview between the victim and investigating detective. Gregory's position appears to be posited on the fact that the prosecution failed to enter the tape recording into evidence or to have it played for the jury. The fundamental flaw in Gregory's position is that the record indicates the defense was aware of the tape recorded interview as trial counsel extensively cross-examined both the detective and the victim on these statements allegedly made in the interview.[31] Consequently, it does not appear from the record that there was a *Brady* violation.[32]

Based on the record before it, this Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Gregory's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Gregory is not entitled to relief under his second and third grounds.

Ground 4: Hearsay Evidence.

Gregory challenges the introduction of medical records into evidence as violating the hearsay rule and confrontation clause of the U.S. Constitution. Respondent contends that this

---

testify before the conduct violates the defendant's right to due process.").

[30] *See Moses v. Payne*, 555 F3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[31] Reproduced, *post*, at pages 26 – 27.

[32] *Brady v. Maryland*, 373 U.S. 83 (1963).

[33] 28 U.S.C. § 2254(d).

claim is procedurally barred. Gregory raised this claim in his state habeas proceeding. The Sacramento County Superior Court rejected Gregory's arguments, holding:

> Claims petitioner could, but failed to, raise on appeal are not cognizable on a petition for habeas corpus absent a showing of compelling circumstances, which the petition does not allege. (*See In re Dixon* (1953) 41 Cal.2d 756, 759, and *In re Harris* (1993) 5 Cal.4th 813, 828.) Because the claims of prosecutorial misconduct and admission of hearsay evidence could have been raised on appeal, they are barred by *Dixon.*

> Petitioner claims various exhibits were entered into evidence in violation of the hearsay rule. Again, the petition does not show trial counsel objected or that appellate counsel should have raised the issue. Nor has petitioner attached transcripts showing how the court ruled on the evidence or that the evidence was inadmissible. (See Evid. Code, § 1220 et seq.)

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[34] This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[35] "Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."[36] In his traverse, Gregory does not address the procedural bar issue; consequently, Gregory has failed to place the procedural bar defense in issue before this Court.

Even if the Court were to reach the merits of Gregory's claim, he would not prevail. Gregory contends that allowing the introduction of medical records into evidence violated the confrontation clause under *Crawford v. Washington*.[37] In *Crawford* the Supreme Court held that the confrontation clause prohibits the introduction of "testimonial" out-of-court statements by witnesses whom the accused has no opportunity to confront, *i.e.*, the witness was unavailable and

---

[34] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[35] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[36] *Bennett v. Mueller,* 322 F.3d 573, 586 (9th Cir. 2003).

[37] 541 U.S. 36 (2004).

the accused had a prior opportunity for cross-examination.[38]  Where nontestimonial hearsay is at issue, states are afforded flexibility in their hearsay rules exempting such statements from the confrontation clause.[39]

*Crawford* does not offer a precise definition of "testimonial" evidence, the Court offered various formulations of the core class of testimonial statements:  "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[40]  The Supreme Court noted that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or a former trial; and to police interrogations."  Two years later the Supreme Court further refined its analysis of testimonial versus nontestimonial statements holding, in the context of statements made to the police, that:[41]

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

It is not entirely clear from Gregory's arguments whether he is objecting to the introduction of the medical records, *per se*, or objecting to statements made to the medical personnel rendering treatment and recorded in the medical records.  To the extent Gregory is objecting to introduction of the medical records themselves, this is clearly nontestimonial

---

[38] *Id.*, 541 U.S. at 51–52, 68.

[39] *Id.*, 541 U.S. at 68 (indicating that the test in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), that hearsay statements having an adequate indicia of reliability, *i.e.* "where the evidence falls within a firmly rooted hearsay exception" was sufficient for nontestimonial statements).

[40] *Id.*, 542 U.S. 36, 51–52.

[41] *Davis v. Washington*, 547 U.S. 813, 822 (2006).

evidence.  To the extent that Gregory is objecting to the introduction of statements made and included in the medical records, his argument is foreclosed by the recent decision of the Ninth Circuit in *Moses v. Payne.*[42]

To the extent that Gregory argues that the admission of the medical records violated the California Evidence Code it raises an issue of state law beyond the purview of this Court. Gregory is not entitled to relief under his fourth ground.

Ground 5:  Prosecutorial Misconduct.

Gregory contends that the prosecutor was guilty of prejudicial misconduct in that she:  (1) failed to disclose a taped statement made by the victim to a detective; (2) made false statements in closing argument concerning pretrial statements by the victim that she wanted the charges dropped; and (3) referred to blood on the weapon used (crutch) without any expert testimony that the substance was, in fact, blood.  Gregory raised this ground in his state court habeas petition. The Sacramento County Superior Court in rejecting Gregory's arguments held:

> Petitioner complains the prosecutor engaged in misconduct and his counsel failed to object:  First, the prosecutor allegedly made false statements as to whether the victim told detectives petitioner did not assault her.  Second, the prosecutor withheld exculpatory evidence.  Third, she referred to the crutch as bloody when there was no evidence of blood.  Finally, she expressed her personal opinion petitioner was guilty.  None of the alleged acts constituted misconduct.
>
> The transcript shows during argument the prosecutor said, "Ms. Jones never told Detective Killip unequivocally that Mr. Gregory didn't do this."  (Page 428 of Exhibit 8.)
>
> Petitioner has not identified any testimony in which Jones testified contrary to the prosecutor's statement. [N.3]
>
> > [N.3]  Although petitioner cites RT 265, the only portion of that page that refers to Ms. Jones's communication with Killip is a prefatory statement by defense counsel.  It was not in direct response to a question, i.e., did Jones ever tell Killip that petitioner did not commit the crime.  Petitioner also refers to exhibits as contradicting the prosecutor, but those exhibits were not admitted

---

[42] 555 F.3d at 754–55 (holding that admission of out-of-court statements made for the purposes of diagnosis and treatment, rather than to inculpate the defendant, were non-testimonial and was not an unreasonable application of the legal principle established by *Crawford*).

as evidence. Therefore, petitioner has not shown that the prosecutor misstated the evidence.

Petitioner fails to demonstrate the evidence allegedly withheld was in fact exculpatory. (See Pen. Code, § 1054.1(e); *Brady v. Maryland* (1963) 373 U.S. 83.)

Petitioner claims there was no evidence there was blood on the crutch as stated by the prosecutor. However, the victim testified the crutch looked like it had blood on it. The prosecutor's statement was thus reasonable in light of the evidence.

Nor did the prosecutor express her personal opinion as to petitioner's guilt. A prosecutor may assert the defendant is guilty if that belief is based on the evidence. (See *People v. Mayfield* (1997) 14 Cal.4th 668, 782.) That is what the prosecutor did here. As she summarized the evidence, her assertion petitioner was guilty was a rational inference from the evidence rather than a statement of her personal belief.

Respondent contends that Gregory procedurally defaulted on his fifth ground. For the reasons stated above in the discussion of the fourth ground on this point, the Court agrees. Even if the Court were to reach the merits on the fifth ground, Gregory would not prevail on his first two points for the reasons given for rejecting his arguments on his second and third grounds.

It is unquestionably the duty of a prosecutor to correct what he or she knows to be false and to elicit the truth.[43] In this case, however, as discussed above with respect to Gregory's second ground, the testimony of the victim at trial did not constitute perjury.[44] The Ninth Circuit has noted:[45]

> We note that it is not always improper for a prosecutor or a lawyer to call to the stand a recalcitrant witness whose testimony in some respects will not be truthful, but that it must be made clear to the court and to defense that such an event is occurring, and why. We have in mind as one example, of course, the situation that occurs when a witness makes a pretrial statement that would appear to be truthful, but then discards that truthful position in contemplation of an appearance

---

[43] *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959).

[44] *See United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir.1995) (refusing to find prosecutorial misconduct where the defendant "offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies" between the testimony of one witness at an earlier trial and the testimony of other witnesses at a subsequent trial).

[45] *Commonwealth of Northern Mariana Islands v. Bowie*, 243 F.3d 1109, 1118 n.4 (9th Cir. 2001).

in court, or for any other reason. Federal Rule of Evidence § 801(d) contemplates such an eventuality in connection with prior inconsistent statements of a "turncoat witness." The constitutionality of the admission of such evidence as substantive evidence of guilt was determined in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

On the third point, the prosecutor in closing summation stated: "There's blood smears still visible on the broken crutch as of June 20th." The California Court of Appeal found:

> Defendant also argues "evidence of the use of a weapon in the beating was not established beyond a reasonable doubt." He argues that D.J. "speculates . . . she was beaten with a crutch" and "there were no tests on the crutch found at the home of defendant to determine whether the substance Wilhite saw on the crutch was blood or whether the blood on the crutch belonged to [D.J.]." We disagree.

> While D.J. testified she was unable to identify the object used to beat her on June 18th, she told Officer Wilhite defendant beat her with a crutch on June 20th. There is no evidence that her vision was severely impaired on that date. Thus, her statement that defendant beat her with a crutch on June 20th is not accurately described as "speculation." Moreover, her statement was supported by the recovery of a broken crutch that appeared to have blood on it next to the bed. The fact that the bloodlike substance was not scientifically proven to be D.J.'s blood does not negate the other evidence, in particular D.J.'s statement that defendant beat her with a crutch on June 20th.

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[46] "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"[47] While it may have been more accurate for the prosecutor to have used the term "what appeared to be blood stains," the Court cannot say that this minor variation from the evidence so infected the trial with unfairness sufficient to constitute a denial of due process.

Based on the record before it, this Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based

---

[46] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004), quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[47] *Darden*, quoting *Donnelly v. DeCristiforo*, 416 U.S. 637, 642 (1974).

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[48]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Gregory's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Gregory is not entitled to relief under his fifth ground.

Ground 6:  Ineffective Assistance of Appellate Counsel.

Gregory argues that appellate counsel was ineffective in that counsel failed to:  (1) request a complete transcript including the opening statements; (2) raise the *Brady* violation; (3) raise the issue of prosecutorial misconduct; and (4) raise the issue of the prosecution's statement concerning blood on the crutch.  Gregory raised this ground in the state habeas proceedings.  The Sacramento County Superior Court in rejecting his arguments held:

**3. Ineffective Assistance of Appellate Counsel**

Appellate counsel performs properly and competently when, after exercising discretion, counsel presents only the strongest claims instead of every conceivable claim. (*In re Robbins* (1998) 18 Cal.4th 770, 810.)  The petition fails to assert a claim appellate counsel was ineffective.

**A. Trial Transcripts**

Petitioner complains appellate counsel failed to request transcripts of the opening statements, which he asserts were needed to determine the admissibility of documents.  Again the petition fails to state a claim for relief.  The record on appeal usually does not include opening statements. (Cal. Rules of Court, rule 8.320(c) (3).)  A party may apply for inclusion of additional records, but must explain how it may be useful in the appeal.  (Rule 8.324(c) (1).)  Petitioner fails to explain how any issue as to admission of evidence would have been addressed in the opening statements.

**B. Prosecutorial Misconduct**

Petitioner claims appellate counsel failed to raise claims of prosecutorial misconduct.  However, petitioner's trial counsel did not object to the alleged misconduct, so any issue was not preserved for appellate review.  Additionally, as discussed above, petitioner fails to establish any underlying claim of misconduct by the prosecutor warranting objection by trial counsel.

---

[48] 28 U.S.C. § 2254(d).

### C. Hearsay Evidence

Petitioner claims various exhibits were entered into evidence in violation of the hearsay rule. Again, the petition does not show trial counsel objected or that appellate counsel should have raised the issue. Nor has petitioner attached transcripts showing how the court ruled on the evidence or that the evidence was inadmissible. (See Evid. Code, § 1220 et seq.)

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[49] As he did in his state habeas proceedings, Gregory fails to articulate in his petition to this Court exactly what issue was missed or prejudice he suffered by the omission of the opening statements, which are merely summations of what counsel expects the evidence to be and to prove, from the transcript. As to his second, third and fourth points, as discussed above with respect to his second, fourth and fifth grounds, those points lack merit.

Based on the record before it, this Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[50] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Gregory's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. In particular, Gregory has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance, or that he suffered any prejudice as a result of the alleged omissions. Gregory is not entitled to relief under his sixth ground.

Ground 7: Insufficiency of the Evidence.

Gregory argues that the evidence was insufficient to support his conviction. Gregory points to what he terms inconsistent statements by the victim and factors that made identification of him as the attacker questionable, including the lack of adequate light and the victim's

---

[49] *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[50] 28 U.S.C. § 2254(d).

intoxicated condition.  Gregory raised this issue in his direct appeal.  The California Court of Appeal rejected Gregory's arguments, holding:

> "When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule.  We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, *i.e.,* evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859; see *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

> Defendant contends substantial evidence does not support the jury's finding that he was D.J.'s attacker.  He asserts that "[D.J.'s] intoxicated state, along with her poor eyesight, the darkness of the apartment and her motivation to punish . . . defendant for her suspicion that he had cheated on her led D.J. initially to finger defendant as her attacker."  We are not persuaded.

> At trial, D.J. specifically identified defendant as the person who assaulted her on June 18th.  Even assuming she did not see defendant prior to being hit in the face, she heard his voice.  The jury could have reasonably concluded D.J. could accurately identify defendant's voice based on her testimony that she lived with him, was engaged to be married to him and had known him for over a decade.  Moreover, D.J. began to regain her vision as she was being driven to the motel and recalled defendant being with her at the motel and when she woke up at their apartment on June 20th.

> Defendant also notes that Officer Wilhite did not observe any blood on defendant's clothing or any injuries on his hands on June 20th.  This argument assumes the assaults were such that defendant would have had blood on his clothes; however, defendant fails to point to any evidence supporting this assumption.  Even assuming the assaults were such that defendant would have had blood on his clothes, the jury could have reasonably concluded defendant simply changed his clothes.  Over two days had passed since the initial assault and defendant knew in advance that law enforcement officers were on their way to the apartment on June 20th since he had spoken to the 911 operator.

> With respect to defendant's hands, Officer Wilhite testified that he did not *observe* any injuries to defendant's hands—not that there were no such injuries.  Indeed, he explained that he "never specifically looked at [defendant's] hands."  Thus, the jury could have reasonably concluded that to the extent the assaults would have caused visible injuries to the assailant's hands, Officer Wilhite did not see signs of injury because he did not look at defendant's hands.

While D.J. told Detective Killip she was unsure whether defendant was her attacker, the jury reasonably could have found her statement to Officer Wilhite and testimony at trial more persuasive.

By arguing that D.J.'s identification of him as the attacker was unreliable, defendant asks us to reweigh the evidence and ignore the factual and credibility determinations made by the jury. It is well settled that our role is not to reweigh the evidence upon a claim of insufficiency, but simply to determine whether the record discloses substantial evidence to support an inference of guilt. (*People v. Perry* (1972) 7 Cal.3d 756, 785; *People v. Johnson, supra,* 26 Cal.3d at pp. 575-579.) There is ample evidence to support the jury's finding that defendant was D.J.'s attacker.

Defendant also argues "evidence of the use of a weapon in the beating was not established beyond a reasonable doubt." He argues that D.J. "speculates . . . she was beaten with a crutch" and "there were no tests on the crutch found at the home of defendant to determine whether the substance Wilhite saw on the crutch was blood or whether the blood on the crutch belonged to [D.J.]." We disagree.

While D.J. testified she was unable to identify the object used to beat her on June 18th, she told Officer Wilhite defendant beat her with a crutch on June 20th. There is no evidence that her vision was severely impaired on that date. Thus, her statement that defendant beat her with a crutch on June 20th is not accurately described as "speculation." Moreover, her statement was supported by the recovery of a broken crutch that appeared to have blood on it next to the bed. The fact that the bloodlike substance was not scientifically proven to be D.J.'s blood does not negate the other evidence, in particular D.J.'s statement that defendant beat her with a crutch on June 20th.

As stated by the Supreme Court in *Jackson v. Virginia*,[51] the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This court must, therefore, determine whether the decision of the California Court of Appeal on the merits unreasonably applied *Jackson*. Where, as in this case, the question is one of credibility, the finding of the jury carries the day.[52]

---

[51] 443 U.S. 307, 319 (1979) (emphasis in the original).

[52] *See Schup v. Delo*, 513 U.S. 298, 330 (1995); *Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Petitioner misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. That such evidence exists is clearly established by the record in this case. Gregory bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden he has failed to carry.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[53] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[54] This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[55]

Based on the record before it, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Gregory's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Gregory is not entitled to relief under his seventh ground.

---

[53] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[54] *Jackson*, 443 U.S. at 324 n. 16.

[55] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[56] 28 U.S.C. § 2254(d).

<u>Ground 8:  Failure to Strike Prior Conviction</u>.

Gregory argues that since his prior felony occurred more than 10 years prior to the offense for which he was being sentenced, failure to strike his prior and imposition of the five-year enhancement was arbitrary and capricious.  Gregory raised this claim on direct appeal.  The Court of Appeal in rejecting Gregory's arguments held:

> Defendant argues the trial court abused its discretion in failing to strike his prior conviction for robbery.  We review this argument using settled standards and reject defendant's argument.

> A trial court has the discretion to strike a prior serious felony conviction for purposes of sentencing only if the defendant falls outside the spirit of the Three Strikes law.  (§ 1385; *People v. Williams* (1998) 17 Cal.4th 148, 161; *People v. Superior Court* (1996) (*Romero* ) 13 Cal.4th 497, 529-530.)  In deciding whether to do so, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams, supra,* at p. 161; *People v. Garcia* (1999) 20 Cal.4th 490, 500 ["the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences"].)

> The trial court's "failure to . . . strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard."  (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.]  Second, a '"decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at pp. 376-377.)

> Thus, only in "an extraordinary case—where the relevant factors described in *Williams, supra,* 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ" would the failure to strike be an abuse of discretion.  (*People v. Carmony, supra,* 33 Cal.4th at p. 378.)

Defendant argues "[t]he trial court's decision to consider [his] prior felony as a strike ... was arbitrary" because the conviction occurred over a decade ago, and since that time, "[he] has had only one conviction, a misdemeanor battery in 2003." Defendant's argument both understates and misstates the evidence in the record. His prior 1993 conviction for robbery consisted of stealing a car from a stranger at gunpoint. In 1996, he pled no contest to vehicle theft. In 2003, he pled no contest to misdemeanor battery after punching his neighbor in the face, knocking her to the ground, then punching her ten more times. After defendant was released from prison on the robbery conviction, he violated his parole and was returned to prison on seven different occasions between 1996 and 2001.

Defendant manifestly is not outside the letter or spirit of the three strikes law. The trial court did not abuse its discretion in refusing to strike defendant's prior serious felony conviction.

As the California Court of Appeal noted, striking the prior is within the discretion of the sentencing court. This is manifestly an issue of state law beyond the purview of this Court in these proceedings. As noted above, Gregory cannot convert what is an issue involving the proper interpretation and application of state law to a federal constitutional issue simply by asserting a violation of due process. In short, Gregory has failed to raise a viable due process argument.

There being no federal constitutional issue before this Court, Gregory is not entitled to relief under his eighth ground.

Pending Motions.

The Court has reviewed the motion for leave to conduct discovery (Docket No. 10), motion for leave to request admissions (Docket No. 11), motion for leave to request admissions (Docket No. 20), motion to direct Respondent to lodge additional documents (Docket No. 21), request for leave to conduct discovery (Docket No. 29), request for an evidentiary hearing (Docket No. 32), and request for "Destruction Order" (Docket No. 33), and finds them to be unnecessary to a determination of the issues raised in the petition before this Court.

The only "new evidence" Gregory identifies is a tape recorded interview by the victim by a detective in which it is alleged she recanted her earlier accusation that Gregory was the assailant. The record reflects that on cross-examination the detective testified:

Q.      And did Ms. Jones also tell you that she had heard some voices talking about her assault?

A.      Yes.

Q.     And did she say that as a result of hearing those voices, that she did not believe Eric was the person who had assaulted her?

A.     That's correct. She said she heard voices outside of her window, there were people out there talking about how much money that they had stolen and about that they should have snapped her neck, and that's the reason she believed Mr. Gregory did not assault her.

On that subject, the victim (Carla Jones) testified on cross-examination:[57]

Q.     And when you called 911, you told the 911 operator you wanted to drop the charges that had been brought against Eric Gregory?

MS. BIAFORE:          Objection, hearsay.

THE COURT:           Overruled.

THE WITNESS:        Yes, I did.

Q.     (By Mr. Berson):     The 911 operator directed you to contact the District Attorney's Office; correct?

A.     Yes.

Q.     When you contacted the District Attorney's Office, you told someone there you wanted to drop the charges that their office had brought against Eric Gregory?

A.     Correct.

Q.     The District Attorney's Office told you to contact a detective; correct?

A.     Yes.

Q.     And you did then contact a detective about the case; correct?

A.     That's right.

\*   \*   \*   \*

Q.     When you spoke to the detective about the case, you told the detective that you weren't sure if Eric Gregory was the person who assaulted you, didn't you?

A.     That's correct.

\*   \*   \*   \*

Q.     (By Mr. BERSON):  When you spoke to the detective, isn't it true that the detective that you do not think it was Eric who had hit you?

---

[57] Omissions in testimony relate to prefatory material or testimony unrelated to the issue of the victim's conversation with the detective on the subject of identifying Gregory as her assailant.

MS. BIAFORE: Again I am going to object to the form of the question; it is improper impeachment at this level.

THE COURT: Overruled. You may answer Miss Jones.

THE WITNESS: I did.

Q.    (By MR. BERSON): And you told the detective that you had previously thought it was Eric who had hit you; right?

A.    That's correct?

Q.    But you told the detective that you had since realized that you didn't think it was Eric; right?

A.    That's correct.

Gregory's argument in support of his requests all involve the tape recorded interview containing the alleged recantation by the victim identifying Gregory as the assailant. As the testimony of both the detective and the victim clearly establish, the subject matter and the content of that interview were presented to the jury. Gregory makes no showing whatsoever that the tape recording itself would have contained any additional relevant information—its effect would have been cumulative. In all other respects the points raised by Gregory may be resolved and determined from the record. Consequently, there is no need for discovery, augmentation of the record, or an evidentiary hearing. [58]

## V. CONCLUSION and ORDER

Gregory is not entitled to relief under any grounds raised in the petition. Accordingly,

**IT IS THEREFORE ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the motion for leave to conduct discovery (Docket Nos. 10), motion for leave to request admissions (Docket No. 11), motion for leave to request admissions (Docket No. 20), motion to direct Respondent to lodge additional documents (Docket No. 21), second request for leave to conduct discovery (Docket No. 29), request for an evidentiary hearing (Docket No. 32), and request for "Destruction Order" (Docket 33) are **DENIED**.

---

[58] *See* Rules—Section 2254 Cases, Rules 6, 7, and 8.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[59]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated:  March 30, 2009.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[59] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).